# JULY TERM, 1919.

## PRESENT:

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. SILAS W. PORTER,
Hon. JUDSON S. WEST,        } Justices.
Hon. JOHN MARSHALL,
Hon. JOHN S. DAWSON,

No. 21,812.

HARRY H. BREWER and ELLA BREWER, *Appellants*, v.
A. H. WARNER, *Appellee.*

### SYLLABUS BY THE COURT.

RES JUDICATA—*Sheriff's Sale of Land—Sale Confirmed—No Adjudication of Debtor's Homestead Rights.* Confirmation of a sheriff's sale of land, made under a general execution issued on a judgment for debt, is not an adjudication that the land was lawfully subject to sale; and in an action by the debtor against the creditor for damages for deprivation of exempt property, the debtor may show that the land was his government homestead, and that the debt was contracted before patent issued, notwithstanding confirmation of the sale.

Appeal from Finney district court; GEORGE J. DOWNER, judge. Opinion filed July 5, 1919. Reversed.

*H. O. Trinkle,* of Garden City, for the appellants.

*Richard J. Hopkins,* and *Albert Hoskinson,* both of Garden City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for depriving the plaintiff of his government homestead, by means of a sale under execution to satisfy a debt contracted prior to issuance of the patent. The defendant prevailed, and the plaintiff appeals.

Brewer v. Warner.

The petition tendered other issues than the one stated. They were either waived by the plaintiff, or were properly adjudicated against him, and will receive no further attention.

The plaintiff made final proof under his homestead entry, and received a final receipt on November 22, 1912. The patent followed on March 25, 1913. On December 2, 1912, judgment was rendered by a justice of the peace in favor of the defendant and against the plaintiff, on a grocery bill then more than six months overdue. A transcript of the judgment was filed in the district court on December 4. On January 29, 1915, the defendant caused execution to issue, which the sheriff levied on the land in controversy. The land was sold to the defendant, the sale was confirmed, and a sheriff's deed was duly issued and recorded. Immediately after receiving the sheriff's deed the defendant sold the building on the land, and later sold and conveyed the land itself. The defendant testified that at the time he filed the transcript in the district court he knew the plaintiff had filed on the land as a government homestead, had made final proof, and had received his final receipt. The plaintiff testified that at the time the legal proceedings described were taken he was absent from the state, and knew nothing of them until after the sheriff's deed was recorded.

The plaintiff's position is that the proceedings were perfectly regular, in the sense they were conducted according to all the statutory formalities; but that the defendant abused legal process, and thereby deprived the plaintiff of his homestead, contrary to the express prohibition of the federal statute:

"No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." (U. S. Rev. Stat., § 2296.)

The defendant's position is that confirmation of the sheriff's sale constituted an adjudication that the land was subject to sale and lawfully sold; and that the plaintiff is not at liberty to attack that adjudication collaterally, as by the present action.

The statute provides that lands "not exempt by law" shall be subject to payment of debts, and shall be liable to be taken on execution and sold in the manner prescribed (Civ. Code, § 440, Gen. Stat. 1915, § 7344). The phrase "not exempt by law" includes federal as well as state law.

The federal statute is open to interpretation. Under certain circumstances a government homestead may be sold to satisfy debts contracted before patent, notwithstanding the declaration that "no lands . . . shall in any event become liable," etc. In applying the statute, questions of fact arise: When was the debt created, and when was the patent issued? There is abundant room, therefore, for exercise of the judicial function, and if, in exercise of that function, it has been adjudicated that homesteaded land was subject to sale on execution, it is of no consequence that the court erred. The adjudication cannot be attacked except by direct proceeding in the same court, or by appeal. Was confirmation of the sheriff's sale in this case such an adjudication?

In considering the question just stated, the distinction between a judicial sale proper and a sale by virtue of a general execution must be kept in mind. (*Norton v. Reardon*, 67 Kan. 302, 72 Pac. 861; *Carter v. Hyatt*, 76 Kan. 304, 91 Pac. 61.) In the case of a judicial sale, the court actually or presumptively adjudicates every matter essential to the propriety and validity of the sale decree. Powers which the court possessed at the time of entering the decree may be exercised at the time of confirmation; and in a given instance it may be presumed that this occurred. In the case of a sale under general execution the sheriff does not act as the agent of the court. The court has not specified the property or adjudicated the lien, and has not otherwise been concerned with the course which the sheriff shall pursue. In executing the process the sheriff has no guidance but the law, and takes his chance of finding and levying on property which is not exempt.

The purchaser at a sheriff's sale is not an innocent purchaser. He knows the limitations on the sheriff's power, and buys what the sheriff can sell, and no more. When the sheriff's return of sale comes before the court for confirmation, the proceeding may be, and commonly is, *ex parte*. Confirmation may take place on the motion of the sheriff, or of the purchaser, or on the court's own motion, and at any time, without notice to anybody. Confirmation usually follows an inspection of the writ and the return, and so far as the record discloses confirmation in this instance was typical. The order of confirmation is, indeed, an adjudication of all the facts involved

in the inquiry (*Carter v. Hyatt*, 76 Kan. 304, 306, 91 Pac. 61) ;
but how does the question of the exempt character of land
seized and sold get into the case at that time?

Formerly, the statute relating to confirmation read as fol-
lows:

. "If the court, upon the return of any writ of execution, for the satis-
faction of which any lands or tenements have been sold, shall, after hav-
ing carefully examined the proceedings of the officer, be satisfied that
the sale has, in all respects, been made in conformity to the provisions
of this article, the court shall direct the clerk to make an entry on the
journal that the court is satisfied of the legality of such sale, and an
order that the officer make to the purchaser a deed for such lands and
tenements . . ." (Gen. Stat. 1868, ch. 80, § 458.)

The present statute, enacted in 1909, reads as follows:

"The sheriff shall at once make a return of all sales made under this
act to the court; and the court, if it finds the proceedings regular and in
conformity with law and equity, shall confirm the same, and direct that
the clerk make an entry upon the journal that the court finds that the
sale has in all respects been made in conformity to law, and order that
the sheriff make to the purchaser the certificate of sale or deed provided
for in this act." (Civ. Code, § 500, Gen. Stat. 1915, § 7404.)

Under the old law, if the proceedings were regular, that is,
if the machinery of the law had been manipulated according
to rule, the court was obliged to confirm the sale. Thus, in-
adequacy of price, unless so gross as to indicate no real sale,
was not ground for setting aside a sale. The present statute
was designed to give the court larger authority and larger
discretion in dealing with sheriffs' sales, in order to promote
justice.

It is impossible to say that the statute of 1909 enlarged the
issues presented by a motion to confirm to include the subject
under consideration. The subject is purely one of legal and
not of equitable cognizance, and is of precisely the same char-
acter as it was before 1909. The sheriff is forbidden to sub-
ject exempt property to execution process. The execution
debtor's right is a legal right, and neither the creditor nor the
purchaser, nor any one else, has any equities in the matter.
The result is, we are still confronted by the old question, in the
old form: What does confirmation of a sheriff's sale, made
under a general execution, adjudicate?

The decisions of this court are uniform and unanimous to the

effect that confirmation of an execution sale does not adjudi-
cate the fact that the land sold was lawfully subject to seizure
and sale. The sheriff may sell land not subject to execution,
because it belongs to a person other than the execution debtor.
In that event confirmation adjudicates nothing against the
owner. (*Capital Bank v. Huntoon,* 35 Kan. 577, syl. ¶ 1, 11
Pac. 369.) Indeed, the owner is not even concluded by denial
of his motion to set aside the sale, interposed before confirma-
tion. (*White-Crow v. White-Wing,* 3 Kan. 276; *Harrison &
Willis v. Andrews,* 18 Kan. 535, syl. ¶ 3; *Mills v. Pettigrew,* 45
Kan. 573, syl. ¶ 2, 26 Pac. 33.)

The case last cited is instructive. Pettigrew claimed title
under a deed executed by the receiver of a railroad company.
Mills claimed title by virtue of a sale made under an execu-
tion issued to collect a judgment against the railroad com-
pany. Pettigrew tried to enjoin the sale, but the proceeding
failed otherwise than on the merits. Pettigrew then contested
the sale by motion to set it aside, was defeated, and the sale
was confirmed. Pettigrew then commenced an action of eject-
ment against Mills, and the decision of this court was that he
was not concluded by the adjudication denying his motion and
confirming the sale.

The principle just discussed applies when exempt property
is sold. The sheriff suffers from a defect of power. He has
no more authority to seize and sell property of the judgment
debtor which is exempt than he has to seize and sell property
of a stranger. He cannot create a lien, to be adjudicated by
confirmation, by simply seizing and selling land withdrawn by
law from the scope of his official activity. The issues on con-
firmation are precisely the same in one instance as in the other.
The judgment of confirmation adjudicates no more in one case
than in the other, and this court has so decided. (*Gapen v.
Stephenson,* 17 Kan. 613, syl. ¶ 3.)

In the case just cited, land was attached for the debt of
Gapen, who moved to discharge the attachment on the ground
the property was the homestead of himself and wife. The
motion was denied, and after judgment a decree was entered
for sale of the property to satisfy the judgment. After sale,
Gapen and his wife joined in a motion to set aside the sale, on
the ground the land was their homestead. The motion was

denied. In this court the wife's appearance was disregarded, and the appeal was disposed of as if Gapen alone had moved to set aside the sale. It was said the motion to set aside the sale was in effect a renewal of the motion to discharge the attachment, and so was virtually, but not strictly, governed by the doctrine of *res judicata*. Since, however, the motion had once been denied, and because the decision on the motion would "not affect the ultimate rights of the parties in a regular suit involving the same issues" (p. 618), the court saw no reason to interfere with the decision of the district court overruling the motion on the point presented, that the land was a homestead.

In the case of *Treptow v. Buse,* 10 Kan. 170, judgment was rendered against Treptow by a justice of the peace, an abstract of the judgment was filed in the district court, execution was issued, and land was sold. Treptow's wife moved to set aside the sale, on two grounds: first, that she owned the property, and second, that it was the homestead of herself and husband. The motion was denied, and a counter motion to confirm was allowed. In the opinion the court said:

"We cannot say that the district court abused its discretion when it decided to let the question go before a jury in an action of ejectment. It must be remembered that this decision on the motion is not conclusive as to the facts. If the conveyance was in good faith, and for a valuable consideration, or if the property is her homestead, these facts can be shown in defense to an action of ejectment by the purchaser. No writ of assistance runs to put him in possession. He must bring his action at law, and either party will then be entitled to a jury." (p. 180.)

There is no reason for saying that adjudication of the motion to set aside and to confirm would have been more inclusive, or of more force against Treptow, if he had presented the homestead question instead of his wife. Very clearly, adjudication of the motion to confirm would not have foreclosed further litigation if the confirmation had been *ex parte* and the homestead question had not been presented at all.

The defendant cites the case of *Watkins v. Mullen,* 62 Kan. 1, 61 Pac. 385, in which an administrator's sale and deed of a government homestead were collaterally attacked by a motion to set aside a subsequent sheriff's sale. The probate court, having jurisdiction over the subject, had adjudicated liability of the land to appropriation for payment of debts, and it was held the adjudication, even if erroneous, could not be col-

laterally impeached. The defendant also cites the case of *White v. Houser,* 98 Kan. 645, 158 Pac. 1123. In that case Krouse obtained a judgment against White. Land was attached, the attachment was confirmed, the land sold, and the sale was duly made and confirmed. Houser was subrogated to the rights of Krouse. The land sold in the Krouse case was White's government homestead. The sale was upheld, not because the confirmation adjudicated the homestead question adversely to White, but because liability of the land to seizure and sale had been determined in the principal judgment, and the sheriff, in making the sale, acted pursuant to an order of the court itself establishing the lien and directing the sale.

The court concludes that the order confirming the sheriff's sale did not adjudicate that the land was lawfully subject to appropriation to satisfy the judgment on which the execution was issued.

The judgment of the district court is reversed, and the cause is remanded for a new trial.