NOT DESIGNATED FOR PUBLICATION

No. 117,355

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NEW CENTURY BANK, f/k/a NATIONAL FAMILY BANK OF MUNDEN, KS,
*Appellee*,

v.

CLIFFORD C. MCMILLAN,
*Appellant*,

and

FILANTHI MALOY,
*Defendant*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; RYAN W. ROSAUER, judge. Opinion filed October 27, 2017. Affirmed.

*Tai J. Vokins*, of Vokins Law Office, LLC, of Olathe, for appellant.

*William J. Bahr*, of Arthur-Green, LLP, of Manhattan, for appellee.

Before STANDRIDGE, P.J., HILL and SCHROEDER, JJ.

PER CURIAM: Asking the court to vacate its order to sell his land, Clifford C. McMillan claimed the district court lacked jurisdiction at the time it made its order—an order made more than five years earlier. Anyone seeking relief from a court order must file their motion within a reasonable time. The court held that McMillan's delay of more than five years before asking for relief was unreasonable and denied his motion. Because

1

the record reveals that McMillan knew the sheriff had sold his property several years before he filed this motion asking for relief, we hold the court was within its discretion to deny him any relief.

*Initially, the bank received a judgment against McMillan in another county.*

The Geary County District Court in 2001 granted the National Family Bank of Munden, Kansas—now known as New Century Bank—a default money judgment against Clifford McMillan for $48,910.61 and foreclosed the mortgage on his real estate. The two tracts of Geary County land covered by the mortgage were later sold in partial satisfaction of the debt.

Unsatisfied, the Bank, in October 2005, recorded its judgment against McMillan in Dickinson County. A few years later, on September 2, 2010, the Bank obtained an order of special execution from the Dickinson District Court to sell some real estate owned by McMillan in Dickinson County.

Service of the special execution order was attempted on September 27, 2010, and October 6, 2010. The return of service from October 6, 2010, states that the property was vacant and McMillan had moved to Junction City, Kansas. Notice of the pending sale was also published in a local newspaper on September 27, 2010.

The Dickinson County Sheriff held an auction on McMillan's Dickinson County tracts and sold them to the Bank on October 18, 2010, for $25,000. After the Bank moved to amend the legal description of the real estate, the Bank asked the court to confirm the sale. The district court granted that motion.

On November 17, 2014, McMillan filed a pro se motion in Dickinson County District Court asking for a release of the Bank's judgment. It appears that no action on

2

this motion was taken by the district court. About two years later, in April 2016, McMillan moved to set aside the order of special execution and the order confirming the sheriff's sale. He argued that the Dickinson County court's orders were void for lack of personal and subject matter jurisdiction. In opposition, the Bank challenged McMillan's substantive arguments and contended his motion was really based on the rule in K.S.A. 2016 Supp. 60-260(b)(6) and was not timely.

*The district court took evidence on the motion for relief.*

At the hearing, both parties agreed that the motion was a request for relief under K.S.A. 2016 Supp. 60-260(b). As a preliminary matter, the district court decided there were only two possible subsections of K.S.A. 2016 Supp. 60-260(b) that could apply: subsection (b)(4) and subsection (b)(6). After this determination, the district court heard testimony but limited the testimony to the issue of whether the motion was timely.

The evidence from the hearing supports the district court's findings. McMillan became aware of the sheriff's sale at some point in late 2010, after the sale had been confirmed. The record discloses that McMillan's son told him that someone was on the property that was sold and had been taking things from the land. McMillan himself went to investigate and was told that the land had been sold. McMillan did not raise an objection to the sale at this time, but he asked and was permitted to take some personal items from the real property that was sold. In 2011, McMillan had an adverse reaction to medication he was taking for Parkinson's disease and was deemed incompetent by a Veterans Administration doctor. This declaration of incompetency related to control over his VA benefits.

McMillan was also aware of improvements to the land being made in 2012 and 2013. McMillan said he did not challenge the sale initially because he could not find a

3

lawyer to represent him. McMillan testified that he did not know about the sale before it was held.

Conflicting testimony concerning the attempted service and notice of the sale was introduced at the hearing. A letter from Craig Altenhofen, McMillan's former attorney, was admitted. In this letter dated October 13, 2010, Altenhofen acknowledged receipt of a copy of the order of special execution and recognized having conversations about the matter with the Bank's attorney. The parties disputed service. The Bank president testified that he left notice of the sale with McMillan's daughter-in-law at McMillan's residence in Junction City on September 29, 2010. To the contrary, McMillan's daughter filed an affidavit stating that she did not live in Kansas on this date. The court made no attempt to resolve this conflict because it concluded that McMillan's request for relief was out of time.

In making its ruling, the district court first decided what statutory authority controlled the motion. Because this was a request to set aside an order of execution and not a judgment, the district court held that K.S.A. 2016 Supp. 60-260(b)(6) applied. Next, the district court, after considering all of the evidence, concluded the motion was not filed within a reasonable time as required by K.S.A. 2016 Supp. 60-260(c).

The court based its conclusion on several findings. The court found that McMillan knew about the sale in late 2010 or early 2011 when McMillan's son told him that things were being taken off his property. When the court considered McMillan's lack of capacity due to the adverse reaction of his medication, it found that even so, he knew about the sale and was competent in 2014 when he personally filed a motion for release of judgment. The court concluded that the 2016 motion to set aside the orders was not filed within a reasonable time because it was filed approximately two years after McMillan had regained capacity and knew of the sale.

The district court denied the motion, ruling it was untimely. The court did not address the question of whether it lacked personal or subject matter jurisdiction as McMillan claimed.

*We look first at the controlling statute.*

Frequently, in order to know which law applies to a case, it is important to know what legal mechanism is being used by a party seeking relief. It makes a difference here. Both sides agree that K.S.A. 2016 Supp. 60-260(b) applies. They differ over which subsection controls under these facts. McMillan contends subsection (b)(4)—the portion of the law dealing with void judgments—controls. Such motions can be brought at any time because void judgments are always void. The Bank contends that subsection (b)(6)—commonly known as the "catch-all" section—controls this litigation. Motions under section (b)(6) must be brought within a reasonable time. The district court agreed with the Bank. We will explain later why we agree with the district court. The plain language of the statute, a legal maxim, and caselaw persuade us that the district court was correct. But first, it is helpful to review the statute.

The specific statutory provision at issue, K.S.A. 2016 Supp. 60-260(b), gives five specific grounds for relief and one general category of reasons:

> "(b) *Grounds for relief from a final judgment, order or proceeding.* On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:
>
> (1) Mistake, inadvertence, surprise or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under subsection (b) of K.S.A. 60-259, and amendments thereto;
>
> (3) fraud, whether previously called intrinsic or extrinsic, misrepresentation or misconduct by an opposing party;

5

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief."

Basically then, a party having evidence proving such grounds can seek relief from a court judgment, order, or proceeding. Those three terms—judgment, order, or proceeding—are important and are not listed by the Legislature by chance. All three have technical meanings that must be understood to properly interpret this statute.

*Two statutory definitions guide us.*

In our Rules of Civil Procedure, the Legislature has defined a judgment to mean "the final determination of the parties' rights in an action." K.S.A. 2016 Supp. 60-254(a). Additionally, the writ of execution relevant to our inquiry is defined in K.S.A. 2016 Supp. 60-2401(a). That law states: "A special execution or order of sale is a direction to an officer to effect some action with regard to specified property as the court determines is necessary in adjudicating the rights of the parties in an action." Applying these definitions to the facts here, we can see where the district court was correct.

Based upon these definitions alone, we can see that a special execution cannot be considered a judgment under the Rules of Civil Procedure. A writ of execution is not a "final determination of the parties' rights in an action" because a writ of execution simply directs an officer to take a certain action, such as "sell this tract of land." In essence, a writ of execution is one way a court can effectuate a judgment. See K.S.A. 2016 Supp. 60-2401(a).

Now that we understand the meaning of its terms, if we look closely at K.S.A. 2016 Supp. 60-260(b) itself, the language of subsection (b) provides that the court has

6

discretion to grant relief from a "judgment, order or proceeding" for the various reasons set out in the statute. The first five subsections are all specific provisions for relief. Subsection (b)(6) is a catch-all provision. See *In re Marriage of Johnston*, 54 Kan. App. 2d 516, Syl. ¶ 2 (No. 115,256, 2017 WL 3574709). Based upon the language of the statute, the first three subsections are obviously applicable to judgments, orders, and proceedings. But subsections (b)(4) and (b)(5) refer specifically to judgments, but not to orders or proceedings. See K.S.A. 2016 Supp. 60-260(b)(4) and (5).

By clearly delineating judgments, orders, and proceedings in subsection (b), the Legislature emphasized that the three are different legal mechanisms. Importantly, the Legislature did not include orders and proceedings in the language of subsection (b)(4). Clearly, the Legislature only allows a challenge under subsection (b)(4) if "the judgment is void." Because orders are not judgments, a challenge to an order cannot fall under K.S.A. 2016 Supp. 60-260(b)(4) under the plain language of the statute. A legal maxim reinforces our view.

The legal maxim *expressio unius est exclussio alterius* can be translated from Latin to mean "the inclusion of one thing implies the exclusion of another." The use of this maxim has been useful when looking at and interpreting legislatively created lists:

> "[The maxim] . . . may be applied to assist in determining the actual legislative intent which is not otherwise manifest, although the maxim should not be employed to override or defeat a clearly contrary legislative intent. Under this rule, when legislative intent is in question, we can presume that when the legislature expressly includes specific terms, it intends to exclude any items not expressly included in the specific lists. [Citations omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42, 955 P.2d 1228 (1998).

When we apply this maxim to the present case, we can see that the Legislature included judgments, orders, and proceedings within the language of subsection (b) but excluded orders and proceedings from subsection (b)(4). Thus, we can glean that the

7

Legislature did not intend to include challenges to orders under subsection (b)(4). Therefore, a challenge to an order would fall under subsection (b)(6), which allows the district court to consider any other reason that justifies relief.

Caselaw is also helpful on this point. The Kansas Supreme Court's holding in *Needham v. Young*, 205 Kan. 603, 470 P.2d 762 (1970), supports this interpretation of the statute as well. In *Needham*, an order of execution was challenged because it was issued from a district court that did not render the judgment. This is substantially similar to the challenge McMillan is raising. The Supreme Court construed the motion under K.S.A. 60-260(b)(6) and not any other provision of K.S.A. 60-260(b). While the court did not specifically address subsection (b)(4), the similar nature of the challenges in *Needham*, and here, provides persuasive authority that McMillan's challenge should be controlled by K.S.A. 2016 Supp. 60-260(b)(6). See 205 Kan. at 605-06.

Since McMillan is not challenging the judgment itself, the plain language of the statute shows that McMillan is not raising a claim under K.S.A. 2016 Supp. 60-260(b)(4). The original judgment was entered in 2001. He is challenging an order that arises *from* that original judgment. Because he is not claiming that the judgment is void, McMillan cannot make this challenge under K.S.A. 2016 Supp. 60-260(b)(4). Instead, McMillan's challenge must have been raised under K.S.A. 2016 Supp. 60-260(b)(6)—the catch-all provision. See *Needham*, 205 Kan. at 605-06. The district court did not err by deciding that McMillan's motion is controlled by K.S.A. 2016 Supp. 60-260(b)(6). We must now consider whether the district court abused its discretion concerning the length of the delay between the sale and the motion for relief.

*We find no abuse of discretion by the district court.*

Determinations of what is a reasonable time under K.S.A. 2016 Supp. 60-260(c) are reviewed for an abuse of discretion. See *Morton County Hospital v. Howell*, 51 Kan.

8

App. 2d 1103, 1107-11, 361 P.3d 515 (2015), *rev. denied* 304 Kan. 1017 (2016). The district court abuses its discretion when its decision is fanciful, arbitrary, or unreasonable; makes an error of fact; or makes an error of law. See *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

While McMillan does not argue that the district court made an error of fact or an error of law, he does contend that the court should have considered other factors in its calculation of what was a reasonable time. Essentially, he argues the district court's decision was unreasonable in light of all the circumstances.

Kansas caselaw does provide some guidance on what to look for when deciding what is reasonable. The district court's discretionary decision should be based upon all of the circumstances presented by the facts. The determination should include:

- Consideration of the time between the action from which relief is sought and the time the motion was filed;
- the time the party seeking relief became aware of the grounds for the motion and when the motion was filed;
- any changes the parties have made in reliance upon the belief the judgment was valid; and
- all other relevant factors. *Jones v. Smith*, 5 Kan. App. 2d 352, 355, 616 P.2d 300 (1980).

In *Needham*, the court considered what a reasonable time meant concerning an order of execution issued from a court that did not render the judgment. The court found that a motion filed within the redemption period set by the court was necessarily within a reasonable time. *Needham*, 205 Kan. at 606. This holding is not particularly helpful here because the holding in *Needham* is limited to motions filed within the redemption period.

9

It says nothing about motions filed outside of a redemption period. Here, since no redemption period was set by the court, *Needham* is inapplicable.

Under the circumstances of this case, in our view, the district court did not act unreasonably. The record shows that McMillan clearly knew and acknowledged the sale in 2010. This is evidenced by requesting to take personal property off of the real property. Additionally, McMillan knew improvements were being done to the land in 2012 and 2013, but he did not assert lack of jurisdiction until 2016.

Even if we assume he was completely incapacitated due to the adverse reaction to his medication, the evidence shows that McMillan knew the sale had occurred and he was capable of asserting his legal theory in 2014 when he filed the request for release from judgment. McMillan waited almost two years to file his motion to set aside the order of special execution. After the sale, persons unrelated to the original judgment or the order of special execution purchased portions of the land and had started to build houses and make other improvements on the land. The district court's determination that McMillan did not file his motion within a reasonable time was a reasonable determination based upon the facts. Thus, the court did not abuse its discretion.

Affirmed.